# In the United States Court of Federal Claims

|  |  |
|---|---|
| DEE MONBO,<br><br>        *Plaintiff,*<br><br>v.<br><br>THE UNITED STATES,<br><br>        *Defendant.* | No. 24-1368<br>(Filed: March 7, 2025)[1] |

*Dee Monbo*, Owings Mills, MD, pro se.

*Joshua N. Schopf*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

**OPINION AND ORDER**

**LERNER,** *Judge*.

    This is a bid protest brought by pro se Plaintiff Dee Monbo. Ms. Monbo is the owner and president of a Maryland corporation, Monbo Group International, Ltd. ("MGI"). MGI submitted a bid to the General Services Administration ("GSA") for a contract to provide government-wide professional services and was not selected. Ms. Monbo brings this suit to challenge MGI's loss. Am. Compl., ECF No. 10.

    Under this Court's rules, corporations must be represented by counsel and cannot be represented by a pro se litigant. *See* Rule 83.1(a)(3) of the Rules of the Court of Federal Claims ("RCFC"). However, Plaintiff contends that she brings this suit not on behalf of MGI, but as a

---

[1] The Court publishes this Opinion, formerly issued under seal, in its original form. Plaintiff timely proposed redactions but did not provide a reasoning for them; Defendant did not propose any. This Court has discretion to redact sensitive information from public filings, including "protected information" as defined by its model protective order. *See* Rules of the Court of Federal Claims ("RCFC") 5.2(a); RCFC App. C, Form 8 ¶ 1. The Court finds Plaintiff's proposed redactions contain neither protected information nor sensitive personal information that must be withheld from the public.

separate sole proprietor. She claims to have submitted a "joint" proposal with MGI and argues she thus may prosecute this suit pro se.

The Government moves to dismiss. Mot. to Dismiss, ECF No. 17. It contends that Ms. Monbo's suit does not comply with Rule 83.1(a)(3); she lacks Article III standing; her Complaint does not state a claim for bid protest jurisdiction under 28 U.S.C. § 1491(b)(1); and her suit is futile because Ms. Monbo and MGI are debarred from federal procurement. *Id.* at 1–2.

For the reasons below, the Government's Motion to Dismiss is **GRANTED**.

## I. Factual Background

Because the Government's motion to dismiss for lack of subject matter jurisdiction "challenges the truth of the jurisdictional facts alleged in the complaint," this Court considers "relevant evidence" outside the Complaint to resolve the factual dispute. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) (citations omitted). And to resolve the motion to dismiss for failure to state a claim, the Court takes judicial notice of "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015).

### A. MGI and the Dee Monbo Sole Proprietorship

Plaintiff is the owner and president of MGI, a Maryland corporation. *See Monbo v. United States*, No. 24-890, 2024 WL 5165707, at *1, *2, *5 (Fed. Cl. Dec. 19, 2024) (reviewing communications in which Ms. Monbo described herself as "president" of MGI). MGI is registered in the federal online System for Award Management ("SAM" or "SAM.GOV") with a unique entity identification number of FKYVCHTRAMU8. *Id.* at *1. *See generally Focus Revision Partners v. United States*, 161 Fed. Cl. 711, 724 (2022) (explaining that entities doing business with the federal government use the Unique Entity ID created in SAM). In addition, Ms. Monbo holds a sole proprietorship registered under her name, "Dee Monbo." Am. Compl. at 3.[2] The sole proprietorship's unique entity ID in SAM is XQ6KZY77S5F8.[3] *See also Monbo*, 2024 WL 5165707, at *1. The two entities share the same address. Am. Compl. at 35. Ms. Monbo does not allege that she is an attorney. *See generally, id.*

Plaintiff asserts that her sole proprietorship and corporation are "two separate federal contractors operating together for a common goal" under a "joint collaboration agreement." *Id.* at 3, 5. She alleges that the two "are known to work together and have made agreements to that effect." *Id.* at 5. Plaintiff's Amended Complaint contains a document titled "Joint Collaboration Agreement Between Monbo Group International, LTD and Dee Monbo (A Sole Proprietor)," dated January 2, 2019. *Id.* at 35. Although the document purports to record an agreement, it includes only the first and fifth pages, and all substantive language is redacted. *Id.* at 35–36. It also purports to record "[e]ach Collaborator's respective [percentage] interest in the Joint

---

[2] Page numbers for the Amended Complaint refer to the ECF-assigned numbers.
[3] *See Exclusion: Dee Monbo*, SAM.GOV, https://sam.gov/exclusions-new?pirKey=523071&pirValue=1701270467702707 (last visited Feb. 14, 2025).

Collaboration," but this too is redacted, as are the names and titles of each party's agent. *Id.* at 35. It shows that MGI and the proprietorship share the same business address. *Id.*

The System for Award Management "contains exclusion records" of "the entities debarred, suspended, [and] proposed for debarment" from federal contracting pursuant to Federal Acquisition Regulation ("FAR") Subpart 9.4. FAR § 9.404. SAM records show that both MGI and the Dee Monbo sole proprietorship are subject to active exclusions from federal contracting as a result of unrelated proceedings conducted by the Department of the Navy. *See* App'x to Def.'s Mot. to Dismiss (hereinafter "Def.'s App'x"), ECF No. 17-1 at 29–39. The Navy proposed that MGI be debarred on October 20, 2023, and on November 29, 2023, debarment proceedings were completed and MGI's exclusion was finalized.[4] *Id.* at 36–38. SAM also shows multiple corresponding active exclusions for Dee Monbo as an "individual," proposed and finalized on the same dates as for MGI.[5] *Id.* at 31–33. The same is true for an apparent business alias, "Deafueh Monbo."[6] *Id.* at 38.

Contractors have exclusion records in SAM when they are ineligible to receive contracts. FAR § 9.405(b). The effect of these exclusions is that

> [c]ontractors debarred, suspended, proposed for debarment, or voluntarily excluded, are excluded from receiving contracts, and agencies shall not solicit offers from, award contracts to, or consent to subcontracts with these contractors . . . . Contractors debarred, suspended, proposed for debarment, or voluntarily excluded, are also excluded from conducting business with the Government as agents or representatives of other contractors.

FAR § 9.405(a).

Plaintiff admits that her debarment occurred; although, she has described it as "unlawful[]." Pl.'s First Mot. to Stay at 1, ECF No. 23 at 1. She acknowledges that "[t]he Department of the Navy . . . published Plaintiff's name on a Debarment List." *Id.* Her Amended Complaint does not mention the debarments of MGI or her sole proprietorship. Am. Compl. Ms. Monbo has since asserted that she is bringing a separate lawsuit to challenge her debarment in the United States District Court for the District of Columbia. Pl.'s First Mot. to Stay at 1. *See also* Pl.'s Second Mot. to Stay, ECF No. 26; Pl.'s Third Mot. to Stay, ECF No. 27.

### B.    The Solicitation and MGI's Proposal

The solicitation at issue involves GSA's Request for Proposal ("RFP") No. 47QRCA23001. Am. Compl. at 6. GSA issued the RFP on June 15, 2023. *Id.* The solicitation was for the One Acquisition Solution for Integrated Services Plus ("OASIS+") Small Business

---

[4] *See Exclusion: Monbo Group International, Ltd*, SAM.GOV, https://sam.gov/exclusions-new?pirKey=522012&pirValue=1701262016960930 (last visited Feb. 19, 2025).

[5] *See Exclusion: Monbo Dee*, SAM.GOV, https://sam.gov/exclusions-new?pirKey=523071&pirValue=1701270467702707 (last visited Feb. 19, 2025); *Exclusion: Dee Monbo*, SAM.GOV, https://sam.gov/exclusions-new?pirKey=522051&pirValue=1701270412896524 (last visited Feb. 19, 2025).

[6] *See Exclusion: Deafueh Monbo*, SAM.GOV, https://sam.gov/exclusions-new?pirKey=522011&pirValue=1701261943056040 (last visited Feb. 19, 2025).

program, a government-wide multiple award procurement for services set aside for small businesses. *Id.* at 53.

Plaintiff claims that her sole proprietorship and her corporation submitted a joint proposal in accordance with the solicitation's instructions on October 20, 2023. *Id.* at 8. Citing her redacted Joint Collaboration Agreement, Plaintiff alleges that her sole proprietorship and MGI "agree[d] to pool their resources" regarding this solicitation; are jointly "responsible for profits, losses, costs, and risks" associated with the solicitation; and that the two entities share resources. *Id.* at 5. She claims that the joint nature of the submission was "indicated on the cover page of the proposal and inside the proposal submitted to the Agency." *Id.* However, her Amended Complaint does not contain this cover page or any other sections of her proposal that indicate a joint submission. *See generally* Am. Compl.

Plaintiff claims the solicitation allowed offerors to verify their past performance history by submitting a project verification form. Am. Compl. at 8. *See generally id.* at 278. Plaintiff states that the joint offerors submitted the applicable form for two past projects, "GSA-Gunwyn" and "NLM-158." *Id.* at 8. Her Complaint includes a project verification form for the GSA-Gunwyn project that she claims was submitted with the proposal. *See id.* at 279. However, that form states that the "Offeror Name" was "Monbo Group International" and its unique entity ID was FKYVCHTRAMU8. *Id.* The same form contained a section for "Joint Venture Certification." *Id.* at 288. But that section is empty. *Id.* Further, a solicitation amendment form SF-30 dated April 22, 2024 listed the "name . . . of contractor" as "Monbo Group International, Ltd." Def.'s App'x at 28. "Dee Monbo" signed this form in her capacity as "Partner" of MGI. *Id.*

### C. Evaluation Results and Award Decision

The Agency sent an "Unsuccessful Offeror Notification" letter on July 30, 2024 via email. *Id.* at 296, 301–02. Both the email and the letter were addressed to "Monbo Group International, LTD – FKYVCHTRAMU8." *Id.* The letter stated that despite the verification form MGI submitted, its proposal did not include sufficient past performance information for the GSA Gunwyn and NLM-158 projects. *Id.* at 298. As a result, the Agency stated that MGI's proposal had been eliminated from further consideration. *Id.*

Ms. Monbo responded on August 1 and August 5. *Id.* at 301–02. She sent both emails from the address "dmonbo@monbogroup.com." *Id.* She signed the emails as "Dee Monbo, CPA, MBA, Monbo Group International." *Id.* Subsequent emails Ms. Monbo sent to a customer support team were from the same address and with the same signature. *Id.* at 304, 306. Ms. Monbo protested that as permitted by the solicitation, MGI's proposal "included a Letter stating the inability to obtain a record of past performance along with the information required" for both the Gunwyn-GSA and NLM-158 projects. *Id.* at 301.

On August 20, 2024, GSA sent an updated unsuccessful offeror notification letter. Def.'s App.'x at 40. The letter was again addressed to MGI and explicitly described MGI as the "Offeror." *Id.* at 40, 42–43. It contained the same information as the first letter, except that it added MGI's and Plaintiff's debarments as an additional ground for disqualification:

> The Offeror (Monbo Group International, LTD) and Dee Monbo have active
> SAM exclusions and debarment as of 11/29/2023. Accordingly, the Offeror is

4

excluded from receiving contracts, and agencies shall not award contracts to these contractors. See FAR 9.405. This Offeror cannot be determined a responsible prospective contractor in accordance with FAR 9.104-1, and therefore, the Offeror is ineligible from receiving an OASIS+ award.

*Id.*

### D.     Procedural Background

Plaintiff filed a Complaint in this Court on September 3, 2024, and an Amended Complaint on September 9, 2024. Compl., ECF No. 1; Am. Compl. Plaintiff contends that she has Article III standing and statutory standing as an "interested party" under § 1491(b)(1) because her "joint proposal" with MGI makes her an "actual bidder." Am. Compl. at 4. Plaintiff asserts that her proposal contained the requisite past performance information. *Id.* at 10–12. Plaintiff claims that if not for the Agency's erroneous past performance decision, her joint proposal with MGI "would have been awarded the contract." *Id.* at 11, 16. Plaintiff requests that this Court set aside the Agency's finding on the past performance question. *Id.* at 20. But Ms. Monbo does not ask the Court to review her debarment or contest MGI's disqualification on those grounds. *See generally id.* (failing to address that since both she and MGI were debarred, they were ineligible even if the Agency's past performance determination were favorable).

At the Court's September 19, 2024 Joint Status Conference, the Court informed Plaintiff of Rule 83.1(a)(3) and afforded Plaintiff an opportunity to seek counsel for MGI while the Government prepared its Motion to Dismiss. To date, she has not done so.

On November 4, 2024, the Government filed its Motion pursuant to Rules 41(b), 12(b)(1), and 12(b)(6). Mot. to Dismiss at 1. It argues that to the extent the lawsuit seeks to vindicate MGI's rights, Rule 83.1(a)(3) requires MGI to be represented by counsel. *Id.* at 1. The Government thus moves for dismissal under Rule 41(b) for failure to comply with this Court's rules. *Id.* at 1. Second, the Government argues that Ms. Monbo's claim of a "joint proposal" is insufficient to give her Article III and statutory standing to challenge MGI's exclusion from award. *Id.* at 1–2. Finally, the Government asserts that because both Ms. Monbo and MGI are debarred from federal contracting, her suit is futile because neither can receive a future award. *Id.* at 1.

Plaintiff requested three extensions of time to respond to the Motion to Dismiss. *See* ECF Nos. 19, 21, 24. The Court granted each request in part. *See* ECF Nos. 20, 22, 25. Plaintiff also filed a Motion to Stay this case pending resolution of a separate challenge to, among other issues, her debarment in the United States District Court for the District of Columbia. *See* Pl.'s First Mot. to Stay. Additionally, she requested, without stating any reasons, to suspend her response date to the Motion to Dismiss. *See* Pl.'s Mot. to Suspend Due Date, ECF No. 24. The Court denied that request and ordered Plaintiff to respond to the Motion to Dismiss by January 21, 2025. *See* ECF No. 25.

As of issuance of this Opinion, Plaintiff has not responded. Instead, Ms. Monbo filed successive, identical Second and Third Motions to Stay two weeks after her response was due. *See* ECF Nos. 26, 27. On February 11, 2025—over five months after she filed her initial

5

Complaint and three months after the Government filed its Motion to Dismiss—Plaintiff moved to file a Second Amended Complaint under Rule 15(a)(2) of this Court's Rules. ECF No. 28.

## II. Standard of Review and Jurisdiction

### A. Motion to Dismiss Pursuant to Rule 41(b)

The United States Court of Federal Claims may properly dismiss a case under Rule 41(b) when the plaintiff has failed to prosecute or to comply with the Rules or a court order. *Steeves v. United States*, No. 2022-1079, 2022 WL 2869712, at *2 (Fed. Cir. July 21, 2022) (quoting RCFC 41(b)). Rule 83.1(a)(3) provides that "[a]n individual who is not an attorney . . . may not represent a corporation, entity, or any other person in proceedings before this court." *Brewer v. United States*, 150 Fed. Cl. 248, 250 (2020) (alteration in original) (quoting *Balbach v. United States*, 199 Fed. Cl. 681, 683 (2015)). "Violation of this rule is grounds for dismissal of a complaint for lack of prosecution pursuant to [Rule] 41(b)." *Id.* (citing *Balbach*, 199 Fed. Cl. at 683).

### B. Motion to Dismiss Pursuant to Rule 12(b)(1)

"While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, [she], nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Diaz v. United States*, 127 Fed. Cl. 664, 669 (2016), *aff'd*, 853 F.3d 1355 (Fed. Cir. 2017) (quoting *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010)). "The Court of Federal Claims, 'though an Article I court, applies the same standing requirements enforced by other federal courts created under Article III.'" *BCG Fed. Corp. v. United States*, 172 Fed. Cl. 543, 551 (2024) (quoting *Starr Int'l Co. v. United States*, 856 F.3d 953, 964 (Fed. Cir. 2017)). "For a party to have standing, it must satisfy constitutional requirements" of an injury-in-fact, causation, and redressability, "and also demonstrate that it is not raising a third party's legal rights." *Starr Int'l Co.*, 856 F.3d at 964.

"To survive a motion to dismiss for lack of standing, a complaint must contain sufficient factual matter that would plausibly establish standing if accepted as true." *BCG Fed. Corp.*, 172 Fed. Cl. at 551 (quoting *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1355 (Fed. Cir. 2018)). But "[i]f a motion to dismiss for lack of subject matter jurisdiction . . . challenges the truth of the jurisdictional facts alleged in the complaint, [the court] may consider relevant evidence in order to resolve the factual dispute." *Reynolds*, 846 F.2d at 747 (citations omitted). "[T]he party asserting jurisdiction must be given an opportunity to be heard before dismissal is ordered." *Id.* (citation omitted). A bid protest "brought by a plaintiff without constitutional standing must be dismissed under [Rule] 12(b)(1)." *Acuity-CHS Middle E. LLC v. United States*, 173 Fed. Cl. 788, 796 (2024) (citation omitted).

### C. Motion to Dismiss Pursuant to Rule 12(b)(6)

Dismissal under Rule 12(b)(6) is appropriate "when the facts asserted by the claimant do not entitle [her] to a legal remedy." *Welty v. United States*, 926 F.3d 1319, 1323 (Fed. Cir. 2019) (quoting *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)). "A protest brought by a plaintiff without statutory standing must be dismissed under [Rule] 12(b)(6)." *Acuity-CHS*, 173 Fed. Cl. at 796 (citing *CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir.

6

2023)). "Under the Tucker Act, the Court of Federal Claims has jurisdiction over actions 'by an interested party objecting to . . . the award of a contract' by a federal agency." *REV, LLC v. United States*, 91 F. 4th 1156, 1163 (Fed. Cir. 2024) (alteration in original) (citing 28 U.S.C. § 1491(b)(1)). To satisfy this statutory standing requirement a plaintiff must make two showings. *Id. See also CACI*, 67 F.4th at 1152–55 (explaining § 1491(b)(1) standing is statutory and non-jurisdictional). "First, the plaintiff must show that it is an 'interested party.'" *REV, LLC*, 91 F.4th at 1163 (citing *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358 (Fed. Cir. 2018)). Second, it must demonstrate that "it was prejudiced by a significant error in the procurement process." *Id.* (citation omitted).

Because Tucker Act standing is statutory, not jurisdictional, the Court must accept as true a complaint's well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Acuity-CHS*, 173 Fed. Cl. at 788 (citations omitted). The Court should "consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (alteration in original) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322). The Court may look to matters "integral to the claim . . . [and] matters of public record." *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (alteration in original) (citation omitted). And the Court "is not bound to accept plaintiff's allegations with respect to the effect of an exhibit and may independently examine its contents." *Terry v. United States*, 103 Fed. Cl. 645, 653–54 (2012) (citation omitted). "In the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Allen Eng'g Contractor, Inc. v. United States*, 115 Fed. Cl. 457, 464 (2014), *aff'd*, 611 F. App'x 701 (Fed. Cir. 2015) (citation omitted).

### D.      Motion to Stay

"It is within the sound discretion of the [Court] to grant or deny a request to stay proceedings." *Groves v. McDonough*, 34 F.4th 1074, 1079 (Fed. Cir. 2022) (citations omitted). A stay "issued pending final resolution of another case" is "considered indefinite." *Cheshire Hunt, Inc. v. United States*, 149 Fed. Cl. 216, 219 (2020). To justify an indefinite stay, it is Plaintiff's burden to establish "a pressing need." *Groves*, 34 F.4th at 1080 (citation omitted). A plaintiff must show a "'clear case of hardship or inequity in being required to' proceed with litigation." *Brown v. United States*, 131 Fed. Cl. 540, 541 (2017) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). The Court should "'balance [the] interests favoring a stay' against opposing interests," which include the countervailing costs to the Government. *Groves*, 34 F.4th at 1080 (alteration in original) (citation omitted). One "[o]verarching" interest weighing against a stay is "the [C]ourt's paramount obligation to exercise jurisdiction timely in cases properly before it." *Id.* (citation omitted).

### E.      Motion to Amend Complaint Pursuant to Rule 15(a)(2)

"The grant or denial of an opportunity to amend pleadings" pursuant to Rule 15(a)(2) "is 'within the discretion of the trial court.'" *FreeAlliance.com, LLC v. United States*, 173 Fed. Cl. 598, 604 (2024) (quoting *Datascope Corp. v. SMEC, Inc.*, 962 F.2d 1043, 1045 (Fed. Cir. 1992)). While a Court ordinarily freely grants leave to amend, it should not do so if the following are present: "undue delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies . . . , undue prejudice to the opposing party . . . , or futility of amendment." *Id.* (citing *Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403–04 (Fed. Cir. 1989)). "A court may deny a motion to amend a complaint based on futility if . . . the claim added by the amendment could not withstand a motion to dismiss." *Island Creek Assocs., LLC v. United States*, 172 Fed. Cl. 729, 742 (2024).

## III.    Discussion

### A.    Plaintiff Does Not Establish a Need or Hardship to Justify an Indefinite Stay.

Plaintiff asks this Court for a stay pending resolution of an Administrative Procedure Act ("APA") case she filed in the District Court for the District of Columbia. *See* Pl.'s First Mot. to Stay; Pl.'s Second Mot. to Stay; Pl.'s Third Mot. to Stay. In that case, Plaintiff challenges her debarment from federal contracting by the United States Navy in 2023 proceedings unrelated to the procurement at issue here. Pl.'s First Mot. to Stay at 1–2. Ms. Monbo claims that litigating more than two cases at once as a pro se litigant is a "hardship and a form of irreparable injury." Pl.'s Second Mot. to Stay at 4. She also argues that her "burden in complying with the District Court's Briefing Schedule" is "significant." *Id.*

This argument is unpersuasive. As this Court recently observed, Plaintiff is a "sophisticated party" who "has filed eight cases in this Court" since May 2023. Order Dismissing Amended Complaint, *Monbo v. United States*, No. 24-cv-2083 (Fed. Cl. Jan. 24, 2025), Dkt. No. 27 (Roumel, J.). The Court is unconvinced that requiring Ms. Monbo "to proceed with" two cases would be a "hardship or inequity" given the slate of concurrent litigation she has initiated. *Brown*, 131 Fed. Cl. at 541. And regardless, the prospect of concurrent or additional litigation is not on its own a hardship. *See, e.g.*, *id.* ("The court cannot agree that the possible need for additional briefing . . . constitutes a hardship that necessitates a stay of proceedings.").

Plaintiff presumes "that the District Court's decision . . . will impact this Court's decision." *Haddock v. United States*, 135 Fed. Cl. 82, 91 (2017). But that rationale is unpersuasive because the claims are based on different law. *Id.* The District Court action is not a prerequisite to determining the outcome of this case, as the Government argues for dismissal on grounds independent of Plaintiff's debarment, including her failure to comply with Rule 83.1(a)(3). *See, e.g.*, Mot. to Dismiss at 1, 8. And regardless, "concerns about 'avoid[ing] duplicative litigation and conserv[ing] judicial resources' do not satisfy the 'pressing need' required to issue an indefinite stay." *Cheshire Hunt*, 149 Fed. Cl. at 222 (alteration in original) (quoting *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997)).

Plaintiff also argues there is "wisdom in preserving the status quo ante" until the District Court resolves her debarment claims. Pl.'s Second Mot. to Stay at 4. But neither Plaintiff nor Defendant are prejudiced "if required to proceed without a stay." *Braswell v. United States*, 155 Fed. Cl. 148, 150 (2021) (citations omitted). Plaintiff has been debarred and ineligible to receive federal contracts since October 2023—information that is publicly available on SAM. Def's App'x at 29–39. And to the extent that Plaintiff is concerned about losing an opportunity for a bid protest remedy if her debarment challenge is successful, any future impact on her ability to bring a challenge is a result of "the interplay of statutes regulating federal government procurement." *Harris Patriot Healthcare Sols., LLC v. United States*, 95 Fed. Cl. 585, 597

(2010).  This Court has held that "jurisdictional limitations that might prevent challenges to agency action" in the future "do not present a 'pressing need for [a] stay' of proceedings." *Id.* (alteration in original) (quoting *Cherokee Nation*, 124 F.3d at 1416).

"Adding these considerations to the need for timely resolution of Plaintiff['s] claims, the interest of timeliness outweighs any potential for inconsistent resolution." *Haddock*, 135 Fed. Cl. at 91.  This case is ripe for review on the jurisdictional issues and threshold matters the Government has raised.  Further, the Court's disposition of these threshold issues may impact other pending bid protest cases Plaintiff has filed in this Court.  *See, e.g.*, *Monbo v. United States*, 24-1658 (Lerner, J.); *Monbo v. United States*, 24-1683 (Roumel, J.); *Monbo v. United States*, 24-2139 (Davis, J.).  Thus, proceeding to resolve the pending motion to dismiss will promote "economy of time and effort for [the Court], for counsel, and for litigants." *Groves*, 34 F.4th at 1079 (citing *Landis*, 299 U.S. at 254) (citation omitted).

Accordingly, Plaintiff's First, Second, and Third Motions to Stay are **DENIED**.

### B. To the Extent MGI Is the Real Party in Interest, Plaintiff Cannot Represent It Under This Court's Rules.

Although Ms. Monbo claims this suit is brought on her own behalf, the facts instead indicate she seeks to prosecute claims on behalf of MGI.  She cannot do so under Rule 83.1(a)(3).

"An individual who is not an attorney may represent oneself or a member of one's immediate family, but may not represent a corporation, an entity, or any other person." RCFC 83.1(a)(3).  Accordingly, "[a] corporation appearing before the United States Court of Federal Claims . . . must be represented by an attorney." *Balbach*, 119 Fed. Cl. at 683 (quoting *Affourtit v. United States*, 79 Fed. Cl. 776, 779–80 (2008)) (alternation in original).  *See also Talasila, Inc. v. United States*, 240 F.3d 1064, 1067 (Fed. Cir. 2001), *reh'g and reh'g en banc denied* (Fed. Cir. 2001) (interpreting predecessor rule to 83.1(a)(3)).  "The Court cannot waive this rule, even for cases of severe financial hardship." *Balbach*, 119 Fed. Cl. at 683 (citing *Affourtit*, 79 Fed. Cl. at 780).  "[T]he plain language of the rule does not contemplate exceptions: A corporation may only be represented by counsel." *Talasila*, 240 F.3d at 1067.  This rule is based on the principle that "a corporation is a legal entity distinct from its officers and shareholders." *Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 355, 357 (2006) (quoting *Finast Metal Prods., Inc. v. United States*, 12 Cl. Ct. 759, 761 (1987)).

Further, Rule 17(a) states that "[a]n action must be prosecuted in the name of the real party in interest." RCFC 17(a).  This rule "ensur[es] that the proper plaintiff is prosecuting the claim, *i.e.,* that the plaintiff is the person who possesses the right to be enforced." *Anchor Sav. Bank, FSB v. United States*, 121 Fed. Cl. 296, 313 (2015) (quoting *Mitchell Food Products, Inc. v. United States*, 43 F. App'x. 369, 369 (Fed. Cir. 2002)).  Therefore, under Rule 83.1(a)(3), "Ms. Monbo may only proceed if she can show that she is the appropriate party in interest to bring her claim." *Monbo*, 2024 WL 5165707, at *5.

To assess compliance with Rule 83.1(a)(3), this Court examines exhibits attached to the plaintiff's complaint, evidence of correspondence between the agency and the party at issue, the nature of any relationships between the plaintiff and the entity, and representations by the parties.  *See, e.g.*, *Diaz,* 127 Fed. Cl. at 669, 672 (examining plaintiff's exhibits, including submissions

and correspondence with agency); *Monbo*, 2024 WL 5165707, at *5 (analyzing evidence of communications between plaintiff and agency, including how plaintiff signed her name); *Fondel v. United States*, 178 F.3d 1313, 1313 (Fed. Cir. 1999) (affirming case was properly dismissed when plaintiff "filed the complaint in his own name" but "on behalf of [a corporation]"); *Affourtit*, 79 Fed. Cl. at 776–77 (examining corporation's history of submissions and relationship with plaintiff).

This Court has applied Rule 83.1(a)(3) to bar attempts by a corporation's owner, president, or shareholder to proceed pro se to vindicate rights or redress injuries belonging to their corporation. *See, e.g.*, *Balbach*, 119 Fed. Cl. at 682–83 (dismissing claim by the owner and operator of a corporation which had a contract terminated by the Forest Service brought on behalf of his company because the agency "did not enter into the contract with [plaintiff] in his individual capacity," and he was "not a lawyer"); *Affourtit*, 79 Fed. Cl. at 779 ("[A] corporate 'person' can no more be represented in court by a non-lawyer—even its own president and sole shareholder—than can any individual."); *Quoquoi v. United States*, No. 19-661, 2019 WL 4054107, at *1 (Fed. Cl. Aug. 26, 2019); *Mikkilineni v. United States*, 53 F. App'x 82, 83 (Fed. Cir. 2002).

*Diaz v. United States* presents closely analogous facts to the instant case. There, a plaintiff sued in his own name and claimed that he submitted an unsolicited bid to the Navy. 127 Fed. Cl. at 667–68. However, documents attached to his complaint listed a corporation as the "Prime Offeror," and the corporation was "identified in the . . . proposal as a 'Small Business,' not [the] plaintiff." *Id.* at 667. Mr. Diaz "was listed on . . . the proposal as" the business's contact. *Id.* In correspondence, the plaintiff described himself as the "Project Manager" for the corporation and communicated on its behalf. *Id.* at 670. The Court observed that "on balance, the record suggests . . . that the actual offeror of the unsolicited proposal appears to have been" the corporation, "with [plaintiff] working in some capacity for" it. *Id.* Because the plaintiff appeared to "be attempting to litigate the claims raised in the complaint on behalf of a business entity" but was not a lawyer, the Court "dismissed [his case] in accordance with [Rule] 83.1(a)(3)." *Id.* at 670.

The facts are the same here. Materials submitted with Plaintiff's Amended Complaint—including the project verification form submitted to the Agency—identify the "Offeror" as MGI. *Id.* at 279, 296, 301–02, 304, 306; Def.'s App'x at 28, 39, 44, 45. Plaintiff represented she was "the point of contact" and a representative of MGI in her email communications and signature. *Id.* at 301–02, 304, 306. The Agency's communications regarding the bid were all addressed to MGI and used its specific unique entity identifier. *Id.* at 279, 296. No records before this Court indicate a joint submission. Thus, "on balance, the record suggests . . . that the actual offeror of the . . . proposal appears to have been" MGI, with Ms. Monbo "working in some capacity for" it. *Diaz*, 127 Fed. Cl. at 670. It appears that MGI would be the "proper plaintiff [to be] prosecuting the claim" and it is MGI which—as a disappointed bidder—"possesses the right to be enforced." *Anchor Sav. Bank*, 121 Fed. Cl. at 313.

Finally, this Court is guided by a recent decision dismissing a similar case brought by Ms. Monbo under Rule 41(b) for failure to comply with Rule 83.1(a)(3). *Monbo*, 2024 WL 5165707, at *7. Ms. Monbo, proceeding pro se, brought Contract Disputes Act ("CDA") claims related to a contract held by MGI. *Id.* at *1. There, the materials submitted also demonstrated that it was MGI's rights, not Ms. Monbo's, that were at issue. *Id.* at *5–*6. MGI was the holder

10

of the contract about which Ms. Monbo was suing. *Id.* at *6. Communications submitted with her complaint were "written on Monbo Group letterhead and signed by Ms. Monbo in her role as 'president.'" *Id.* at *5. And Plaintiff's exhibits "refer[red] exclusively to 'Monbo Group' or Monbo Group International." *Id.* at *5. Thus, the Court determined that "[MGI], as the holder of the . . . contract . . . is the only party that may bring claims based on [it]." *Id.* at *6.

Although that case presented a CDA claim and this action presents a bid protest, the issue is the same: the facts show that MGI, "as the [offeror] for the GSA contract . . . is the . . . party that may bring claims based on [it]." *Id.* "Monbo Group [International], not Ms. Monbo, is the proper party in interest to bring this claim. Ms. Monbo's attempt to litigate this claim *pro se*, therefore, violates" Rule 83.1(a)(3)." *Monbo*, 2024 WL 5165707, at *6.

Allowing Plaintiff to proceed pro se on these facts would open the door for corporate owners or shareholders that allege a mere facial separation from their company to represent it in circumvention of Rule 83.1(a)(3). But the Federal Circuit has made clear that this "long-standing, virtually universal general rule" is "clear and unqualified." *Talasila, Inc.*, 240 F.3d at 1067 (internal quotations and citation omitted).

Ms. Monbo has had multiple opportunities to obtain counsel; she has not done so. She has also failed to respond to the Government's Motion to Dismiss despite receiving multiple extensions. *Cf. Patterson v. United States*, No. 15-1090C, 2016 WL 2858868, at *1 (Fed. Cl. May 11, 2016) (dismissing under Rule 41(b) when plaintiff failed to respond to motions and Court orders). Thus, insofar as the Complaint alleges MGI's claims, "it must be dismissed pursuant to [Rule] 41(b)." *Monbo*, 2024 WL 5165707, at *6.

### C. Ms. Monbo's Sole Proprietorship

Ms. Monbo contends that regardless of Rule 83.1(a)(3), she may proceed because she alleges claims on behalf of her sole proprietorship, rather than her corporation. Sole proprietorships may proceed pro se so long as the proprietorship lacks legal status separate from its owner under the laws of the state in which it is based. *Nova Exp. v. United States*, 80 Fed. Cl. 236, 239 (2008).

Ms. Monbo alleges her sole proprietorship is based in Maryland. Am. Compl. at 3. Maryland courts and federal courts interpreting Maryland law have found that "[t]he sole proprietorship form of business provides 'complete identity of the business entity with the proprietor himself,'" and as such, a sole proprietorship "has no legal existence apart from its owner." *Bushey v. N. Assur. Co. of Am.*, 766 A.2d 598, 603 (Md. 2001) (internal quotations omitted). *See also Rosedale Attractions & Shows Inc. v. Long*, No. 8:18-CV-03416, 2019 WL 3860319, at *2 (D. Md. Aug. 15, 2019) (citing *Bushey*, 766 A.2d at 603). Thus, because it appears that in Maryland sole proprietorships do "not have independent legal status," Plaintiff could theoretically proceed pro se as a sole proprietor if she truly pursues the proprietorship's claims, not MGI's. *Nova Exp.*, 80 Fed. Cl. at 239. *See also Monbo*, 2024 WL 5165707, at *6 ("It may be possible for Ms. Monbo to pursue a claim *pro se* on behalf of [her] sole proprietorship."). However, proceeding as her sole proprietorship and not on behalf of MGI would be fatal to Ms. Monbo's suit because, as discussed below, the sole proprietorship fails to establish Article III standing or state a claim for statutory standing under 28 U.S.C. § 1491(b)(1).

11

### D.      Ms. Monbo's Sole Proprietorship Lacks Article III Standing.

To establish Article III standing to bring a claim in this Court, Plaintiff must establish (1) an injury-in-fact; (2) that is causally linked to the challenged action; and (3) redressable by a favorable ruling. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff's injury-in-fact must be "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." *Id.* at 560. The Federal Circuit has recently clarified that Article III standing is distinct from the question of statutory standing under 28 U.S.C. § 1491(b)(1). *See CACI*, 67 F.4th at 1152–55. *See also Superior Waste Mgmt. LLC v. United States*, 169 Fed. Cl. 239, 267 n.22 (2024) (explaining that a plaintiff might satisfy Article III's requirements but still not be an "interested party" under the Tucker Act).

#### 1.    Injury-in-Fact

Ordinarily, a bidder "has Article III standing because it claims an injury, namely rejection of its bid, which is traceable to the allegedly defective procurement process." *Barbaricum LLC v. United States*, 172 Fed. Cl. 186, 195 (2024) (citing *Lujan*, 504 U.S. at 560–61). Thus, it is likely that MGI would have had Article III standing had it sued in its own capacity, properly represented by counsel.

But the same is not the case for Ms. Monbo's sole proprietorship. Although she alleges the proprietorship and the corporation submitted a "joint" bid, the Government contests this jurisdictional allegation, which means the Court "may consider relevant evidence in order to resolve the factual dispute." *Reynolds*, 846 F.2d at 747 (citations omitted). As discussed above, Plaintiff's materials contradict her allegation of a joint submission and indicate that MGI was the offeror. Therefore, she does not establish that GSA rejected a bid submitted by the sole proprietorship. *See Barbaricum LLC*, 172 Fed. Cl. at 195; *Superior Waste Mgmt.*, 169 Fed. Cl. at 267 n.30.

Ms. Monbo's only other claim to an injury-in-fact is her assertion that she and MGI are jointly "responsible for profits, losses, costs, and risks" associated with the solicitation and that she has "lost an opportunity to earn profit" through her collaboration agreement. Am. Compl. at 5. Some cases have found that a plaintiff "*could likely* establish Article III standing by asserting it had lost revenue due to [an agency's] allegedly unlawful procurement." *Bitscopic, Inc. v. United States*, 166 Fed. Cl. 677, 691 (2023) (emphasis added). And Ms. Monbo's standing argument also resembles the theory that "[a] potential subcontractor may suffer an injury-in-fact due to the government's procurement decision." *Superior Waste Mgmt.*, 169 Fed. Cl. at 267 n.22. That said, *Bitscopic* and *Superior Waste* addressed Article III standing in dicta, and turned on whether plaintiffs met the narrower requirement of statutory standing under 28 U.S.C. § 1491(b)(1). *See Bitscopic*, 166 Fed. Cl. at 704; *Superior Waste Mgmt.*, 169 Fed. Cl. at 267. And in any event, the redacted "collaboration agreement" provides no facts for this Court to determine whether the proprietorship's economic exposure from this procurement is conjectural or imminent. Thus, Plaintiff does not establish a personal and concrete injury to her proprietorship sufficient to establish standing.

#### 2.    Redressability

Even if Plaintiff could show an injury, she fails on redressability. An alleged injury is redressable if it is "likely, as opposed to merely speculative, that the injury will be redressed by a

12

favorable decision." *Lujan*, 504 U.S. at 561.  An injury is not redressable when it "is beyond both the scope of this case and the court's jurisdiction" because it "cannot be redressed by a favorable decision." *Silver Buckle Mines, Inc. v. United States*, 136 Fed. Cl. 179, 185 (2018) (citation omitted).

Here, a favorable decision would not redress Ms. Monbo's alleged harm because both her sole proprietorship and MGI are debarred.  MGI could not bid for or receive the contract were the Agency ordered to conduct the procurement anew.  FAR § 9.405(a).  Thus, even if the Agency's past performance analysis erred, "the outcome of this suit would not affect [Plaintiff's] future" profits because MGI is ineligible to receive the contract.  *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 542 (2020).  And for Ms. Monbo to receive profits through her purported collaboration with MGI, the separate challenge to her debarment must succeed.  *See generally* FAR § 9.405. Plaintiff's "theory of standing . . . relies on a highly attenuated chain of possibilities."  *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 410 (2013).

Further, a decision on her Amended Complaint would not redress this issue because Ms. Monbo does not challenge her or MGI's debarments here.  Even if she had, this Court's review of debarments is limited to instances when the "challenged suspension was connected to the protested procurement because the suspension was imposed by the procuring agency." *MED Trends, Inc. v. United States*, 101 Fed. Cl. 638, 650 (2011) (citation omitted).  *See also NEIE, Inc. v. United States*, No. 13-164 C, 2013 WL 6406992, at *14 (Fed. Cl. Nov. 26, 2013).  The Court lacks jurisdiction over debarments when the "suspension [was] not in any way connected to an otherwise responsive bid." *Emiabata v. United States*, 151 Fed. Cl. 610, 618 (2020).  The Court may also only review a debarment challenge if the plaintiff actually submitted a bid.  *MED Trends, Inc.*, 101 Fed. Cl. 638 at 650.  Finally, this Court generally may only review proposals for debarments and cannot review the legality of the debarment itself.  *IMCO, Inc. v. United States*, 97 F.3d 1422, 1425 (Fed. Cir. 1996); *NEIE, Inc.*, 2013 WL 6406992, at *13.

Here, Plaintiff does not allege that either her or MGI's debarment "was connected to the [OASIS+] procurement" or "imposed by the [GSA]." *MED Trends*, 101 Fed. Cl. at 650.  She presents no information related to the debarments except to acknowledge they were instituted in a separate proceeding by the Navy.  *See, e.g.*, Pl.'s First Mot. to Stay at 1.  Plaintiff's and MGI's debarments are also finalized, not proposed.  *See, e.g.*, Def.'s App'x at 31, 37.  And as discussed, the record shows that Plaintiff herself "has not submitted any bid that might form the basis of" this Court's jurisdiction. *MED Trends*, 101 Fed. Cl. at 650.  Therefore, Plaintiff's claim that MGI would have been awarded the contract "is beyond . . . the scope of this case and the Court's jurisdiction." *Silver Buckle Mines*, 136 Fed. Cl. at 185 (citation omitted).  Plaintiff does not establish Article III standing.

### E.     The Complaint Fails to State a Claim Because Plaintiff's Sole Proprietorship Is Not an Interested Party Under the Tucker Act.

Even if Plaintiff established Article III standing, her case must be dismissed for failure to state a claim because she does not present well-pled facts showing she is an "interested party" as required by 28 U.S.C. § 1491(b)(1).  *See Acuity-CHS*, 173 Fed. Cl. at 795 ("A plaintiff that establishes standing under Article III must still meet the 'more stringent' statutory requirement of showing that it is an 'interested party.'") (quoting *Weeks Marine, Inc.*, 575 F.3d at 1359).  To be an interested party, "[a] plaintiff must show that it (1) is an 'actual or prospective bidder,' and

(2) 'possesses the requisite direct economic interest.'" *Barbaricum LLC*, 172 Fed. Cl. at 195 (quoting *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)). Plaintiff does not allege facts sufficient to show either.

> 1.  Plaintiff Is Not an Actual Bidder.

An actual bidder "submitted an offer on the protested solicitation." *Bitscopic*, 166 Fed. Cl. at 700 (citing *Rex Serv.*, 448 F.3d at 1307–08). "A prospective bidder is one who, but for alleged deficiencies in the procurement process, would have submitted a bid and diligently pursues its interests before the solicitation period ends." *Sierra Nevada Corp. v. United States*, 154 Fed. Cl. 424, 430–31 (2021) (citing *CGI Fed. Inc. v. United States,* 779 F.3d 1346, 1348 (Fed. Cir. 2015)). Plaintiff's exhibits contradict her joint submission claim, and collaboration with MGI does not make her a bidder.

> a.  Plaintiff Did Not Submit a Bid.

Ms. Monbo alleges she submitted a "joint proposal" with MGI and is thus an "actual bidder." Am. Compl. at 4. But her exhibits, which prevail over the "the bare allegations of the complaint," contradict her legal conclusion. *See Allen Eng'g*, 115 Fed. Cl. at 464. All communications from the Agency—and materials submitted by Ms. Monbo—contain only MGI's name. Am. Compl. at 296, 301–302, 304, 306; Def.'s App'x at 28, 40, 42–43. Ms. Monbo's almost entirely redacted collaboration agreement dates from 2019 and includes no details relevant to this procurement. Am. Compl. at 35–36. And Ms. Monbo communicated on behalf of MGI as its representative. *Id.* at 301–306. But "[s]ubmitting proposals on behalf of [MGI] does not make [Ms. Monbo] an actual bidder in [her] personal capacity." *Quoquoi*, 2019 WL 4054107, at *3 (citation omitted).

Instead, her materials show that the Agency referred to the offeror as MGI and used its unique entity identifier. *See, e.g.*, *id.* at 296. This is particularly relevant because the solicitation incorporated FAR § 52.204-7. Am. Compl. at 172. This provision explains that the entity ID identifies the bidder: "[w]hen submitting an offer, . . . "[t]he Offeror shall enter . . . on the cover page of its offer . . . the unique entity identifier *that identifies the Offeror's name and address as stated in the offer*." FAR § 52.204-7(a) (emphasis added). Thus, GSA's use of MGI's identifier is evidence that only MGI submitted the bid.

The solicitation permitted submissions by joint entities acting through contractor teaming agreements as defined by FAR § 9.601 or joint ventures as laid out in 13 C.F.R. § 125.8. Am. Compl. at 191–92. But Ms. Monbo "has not alleged that [she] formed a[ny such] joint venture with [MGI], and the record does not support such a conclusion." *Gentex Corp. v. United States*, 61 Fed. Cl. 49, 53 (2004) (finding no standing under § 1491(b)(1) to bring claim on behalf of "teammates" where "they were not offerors" and did not "allege that [they] had formed a joint venture"). *See also* Am. Compl. at 288 (showing "joint venture" section blank).

Thus, the evidence indicates that Ms. Monbo's sole proprietorship "did not bid . . . therefore, it is not an 'actual bidder.'" *Rex Serv. Corp.*, 448 F.3d at 1308. Nor is she a prospective bidder. *See Sierra Nevada Corp.*, 154 Fed. Cl. at 431 (citation omitted). There is no evidence Ms. Monbo intended to separately submit her own bid. Nor does she allege that she, as a sole proprietor, was prevented from bidding. *Rex Serv. Corp.*, 448 F.3d at 1308 ("[B]ecause

[Plaintiff] could have bid, but chose not to, it cannot be considered a prospective bidder."). *See also Scott v. United States*, 78 Fed. Cl. 151, 153 (2007) (finding pro se plaintiff who refused to bid on a contract "d[id] not qualify as a prospective bidder, as he did not submit an offer").

b. Plaintiff's Alleged Collaboration with MGI Does Not Make Her an Actual Bidder.

Alternatively, Ms. Monbo argues that her close collaboration with MGI makes her an actual bidder. But an owner's "close relationship" with a company that submitted a bid is not enough to transform the plaintiff into an actual bidder. *M Nicolas Enterprises, LLC v. United States*, 155 Fed. Cl. 608, 613 (2021). In *M Nicolas Enterprises*, a limited liability company submitted a bid that was rejected. *Id.* The company sued together with Ms. Nicolas, the company's "sole owner and President," alleging a § 1491(b)(1) claim. *Id.* at 613. Ms. Nicolas argued that she personally "ha[d] third-party standing to pursue the § 1491(b)(1) claim because, as sole owner, she has 'a close relationship' with [her company], [and] has 'suffered an injury in fact.'" *Id.* at 614. The Court found Ms. Nicolas was not an actual bidder and dismissed her claims. It observed that she "submitted a bid under the Solicitation through and on behalf of [the company]." *Id.* Accordingly, it determined her company was the actual bidder. *Id.* It reasoned that because Ms. Nicolas' limited liability company was a distinct legal entity, she could not personally assume its actual bidder status. *Id.* at 625.

This case presents almost identical facts. Plaintiff's exhibits indicate that Ms. Monbo, "as owner and President of [MGI], submitted a bid under the Solicitation through and on behalf of [MGI]." *Id.* Ms. Monbo similarly claims that the "close relationship" and collaboration agreement shows she has "suffered an injury" and is an actual bidder. *Id.* But Ms. Monbo is not an actual bidder because "MGI, as a [corporation], is a legal entity distinct from Ms. [Monbo]" and her sole proprietorship. *Id.* at 626. This finding is consistent with decisions that have found that a "teammate" relationship was insufficient to make the partner a bidder. *See, e.g.*, *Gentex*, 61 Fed. Cl. at 53. Thus, even if Plaintiff "was [a] teammate[] of [MGI] in this procurement and participated in the proposal effort" she is not an interested party under § 1491(b)(1) because she was not herself the offeror. *Id.*

Finally, Ms. Monbo's argument that her purported collaboration agreement makes her an actual bidder resembles attempts by subcontractors to sue on the bids of a prime contractor. But this Court has long held that "a subcontractor to an offeror in [a] procurement is not itself an actual or prospective offeror, and thus not an interested party." *Eagle Design & Mgmt., Inc. v. United States*, 62 Fed. Cl. 106, 109 (2004). *See also Klinge Corp. v. United States*, 87 Fed. Cl. 473, 477 (2009); *Acuity-CHS*, 173 Fed. Cl. at 796 (citing *Am. Fed'n of Gov't Emps. v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001)). Accordingly, even allegations that a plaintiff has a "teaming agreement" to be a subcontractor in a specific procurement and the bidder's "proposal . . . identif[ied] [the plaintiff] as its subcontractor" do not establish the plaintiff is an actual bidder. *Eagle Design*, 62 Fed. Cl. at 108. Although Ms. Monbo alleges a collaboration with MGI, she is not an actual bidder because she did not submit the proposal. *Id.*

In *Percipient.ai*, the Federal Circuit created a limited exception for prospective subcontractors who may have had a "substantial chance of being [hired]" to challenge violations of statute when the plaintiff did *not* otherwise challenge the award—but it vacated that opinion five months later pending en banc rehearing. *Percipient.ai, Inc. v. United States*, 104 F.4th 839,

15

852 (Fed. Cir. 2024), *opinion vacated*, *reh'g en banc granted*, 121 F.4th 1311 (Fed. Cir. 2024). And in any event, this exception was unavailable to plaintiffs "directly or indirectly challeng[ing] . . . [an] actual . . . award of a government contract," which Plaintiff does here. *Id.* at 853. *See also Acuity-CHS*, 173 Fed. Cl. at 796. Therefore, even if Ms. Monbo's joint submission allegation was analogous to a subcontractor relationship, it would not make her an actual bidder.

### 2. Plaintiff Does Not Allege a Direct Economic Interest.

Even if Plaintiff were an actual or prospective bidder, her allegations fail to establish the second interested party requirement: a "direct economic interest [that] would be affected by the award of" the OASIS+ contract. *Oak Grove Techs., LLC v. United States*, 116 F.4th 1364, 1376 (Fed. Cir. 2024) (citing *Rex Serv. Corp.*, 448 F.3d at 1307). To establish a direct economic interest, the protestor must make a preliminary showing that it had a "'substantial chance' to receive the contract but for the agency's error." *Bitscopic*, 166 Fed. Cl. at 701 (citing *Rex Serv. Corp.*, 448 F.3d at 1307). A protest has a "'substantial chance' . . . if, as a result of a successful bid protest, the government would be obligated to rebid the contract and the protester could compete for the contract during the reopened bid." *Oak Grove*, 116 F.4th at 1377 (quoting *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1359 (Fed. Cir. 2015)).

Ms. Monbo "must establish . . . that [she] is a qualified bidder and could compete for the contract." *Tinton Falls Lodging Realty*, 800 F.3d at 1359. *See also CACI*, 67 F.4th at 1152 ("Every merits issue to a bidder's qualifications is also a statutory standing issue."). The Court's evaluation must "assum[e] . . . that [Plaintiff's] challenge" as alleged in her complaint "would be successful." *Oak Grove*, 116 F.4th at 1377. Therefore, the Court must evaluate whether Ms. Monbo "would have had a substantial chance of receiving the contract" if the Agency's past performance evaluation erred. *Id.* at 1376–77.

Here, Plaintiff "stands no chance at all" of winning the contract if it were re-bid because she and MGI are debarred from federal contracting. *Bitscopic*, 166 Fed. Cl. at 701. *See also* FAR 9.405(a); *MED Trends, Inc.*, 101 Fed. Cl. at 645 (finding plaintiff was not an interested party because it was barred from all federal contracting). And even if the entities were eligible on the submission date, contracting officers must "immediately prior to award . . . again review the exclusion records" and exclude debarred offerors. FAR 9.405(e)(4). Thus, by the time award was made on July 30, 2024, MGI's and Plaintiff's debarments had been final for over eight months and they would have been eliminated. Def.'s App'x at 31, 37. *Cf. Focus Revision Partners*, 161 Fed. Cl. at 721.

Ms. Monbo's exclusion forecloses a direct economic interest. Even if "the government [were] . . . obligated to rebid the contract," she could not compete for the contract. *Oak Grove Techs.*, 116 F.4th at 1377. Plaintiff thus "ha[s] *zero* chance of being a recipient of" the OASIS+ award as a debarred contractor. *Glob. K9 Prot. Grp., LLC v. United States*, 169 Fed. Cl. 116, 160 (2023) (finding ineligible bidder could not demonstrate a direct economic interest). *See also MED Trends, Inc.*, 101 Fed. Cl. at 645. Therefore, she lacks a "substantial chance to be successful in the procurement process independent of any error," and thus has no direct economic interest. *REV, LLC*, 91 F.4th at 1164 n.2.

While the Court must assume Plaintiff's success on the merits, it cannot assume that Plaintiff would be eligible on re-bid because she does not challenge the merits of her debarment here but in a different court. *See, e.g.*, Pl.'s First Mot. to Stay at 1. And, as discussed above, she

likely would not succeed in challenging her debarment here because "the challenged suspension [was not] connected to the protested procurement . . . [nor] was [it] imposed by" GSA—it was a separate proceeding by the Navy. *MED Trends*, 101 Fed. Cl. at 650. *See also NEIE, Inc.*, 2013 WL 6406992, at *14.

Since Plaintiff's allegations establish neither that she was an actual or prospective bidder nor that she has the direct economic interest requisite for standing under § 1491(b)(1), her suit must be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

### F. Plaintiff's Motion to Amend Her Complaint is Denied.

All of the factors that caution against granting leave to amend under Rule 15(a)(2) are present here, including undue delay, dilatory motive, and undue burden to the Government. *FreeAlliance*, 173 Fed. Cl. at 604. Plaintiff's proposed amendments present no new facts, only legal conclusions. And although it might have been appropriate to present such arguments in a response to the Motion to Dismiss, Ms. Monbo has repeatedly failed to do so despite multiple extensions and Court orders. *See* ECF Nos. 19, 21, 22, 24, 25. Amending her Complaint at this very late stage "would result in unnecessary delay and prejudice to the United States." *Every v. United States*, No. 24-1245, 2024 WL 5041120, at *3 (Fed. Cl. Dec. 9, 2024).

More importantly, however, Plaintiff's Motion to Amend is denied because her amendments cannot "withstand a motion to dismiss" and are thus futile. *Island Creek*, 172 Fed. Cl. at 742. Plaintiff seeks two amendments. First, her Second Amended Complaint would add allegations that she is an "interested party" because she is an "offeror," a "Joint Collaborative Partner" of MGI, and MGI's "proposed Subcontractor." ECF No. 28 at 5 (citing *Percipient.ai*, 104 F.4th at 856). But as discussed in Section III.E.1, her alleged close collaboration with MGI does not make Plaintiff an interested party under § 1491(a)(1). *See M Nicolas Enterprises*, 155 Fed. Cl. at 625; *Gentex*, 61 Fed. Cl. at 53. Nor does being an actual bidder's subcontractor. *See Acuity-CHS*, 173 Fed. Cl. at 796; *Eagle Design*, 62 Fed. Cl. at 108.

Ms. Monbo also seeks to add a claim of "Defacto Debarment," claiming that GSA is making a "systematic effort to reject all of" her proposals. ECF No. 28 at 19 (citing *CRCMarineServ., Inc. v United States*, 41 Fed. Cl. 66, 84 (1998)). But her proposed amendments fail to state a claim. A de facto debarment involves agency action that falls short of a formal "FAR subpart 9.4 . . . debarment [or] suspension." *MG Altus Apache Co. v. United States*, 111 Fed. Cl. 425, 443 (2013). Here, the publicly accessible record shows Plaintiff is formally debarred and listed on SAM. A plaintiff must also show a "systemic effort by the procuring agency to reject all of the bidder's contract bids" without following "the applicable debarment procedures" found in the FAR. *Id.* Plaintiff's proposed amendment adds no such facts; instead, it contains the original complaint's facts alleging rejection of its bid only on the past performance issue. *See generally*, Mot. to Amend. Rejection of one bid is insufficient to state a claim for de facto debarment. *See Stapp Towing, Inc. v. United States*, 34 Fed. Cl. 300, 312 (1995).

Further, this Court only has jurisdiction over de facto debarment claims that are properly raised "as a ground of protest (and not as an isolated claim to nullify the debarment)." *MG Altus Apache Co.*, 111 Fed. Cl. at 443. Since Plaintiff's proposed Second Amended Complaint does not include facts sufficient to state a claim for de facto debarment, it appears what Ms. Monbo

17

seeks is an "isolated claim to nullify [her] debarment." *Id.* The Court lacks jurisdiction over this claim, so amendment would be futile. *Id.*

## IV.  Conclusion

For the foregoing reasons, Plaintiff's First, Second, and Third Motions to Stay are **DENIED**. ECF Nos. 23, 26, 27. Plaintiff's Motion to Amend her Complaint is **DENIED**. ECF No. 28. Defendant's Motion to Dismiss is **GRANTED** without prejudice. ECF No. 17. Plaintiff's Motion for Protective Order is **DENIED** as moot. ECF No. 2. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Carolyn N. Lerner  
CAROLYN N. LERNER  
Judge